[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The statewide grievance committee brings this petition, pursuant to Practice Book 41, seeking a determination whether the respondent is incapacitated from continuing to practice law by reason of mental infirmity or illness. The court concludes that such incapacity has not been proved.
In early September 1990, the Hon. Allen Smith, a judge of this court, reported to the committee his suspicion that the respondent was mentally ill. He supported this belief with a report by Dr. Walter Borden, a psychiatrist to whom he had referred the respondent for examination. This court held an evidentiary hearing on the committee's subsequent petition at which Judge Smith, Dr. Borden, and the respondent testified and offered evidence. CT Page 309
The parties agree that the committee, as petitioner, bears the burden of proving the respondent's incapacity. The committee argues that the standard of proof is by the preponderance of the evidence; the respondent contends that the standard is by clear and convincing evidence. In this case, the distinction is academic; the court finds that the petitioner has not proved its case by a preponderance of the evidence.
The testimony of Judge Smith and transcripts of court proceedings in which he has presided and which were introduced as evidence at the hearing established that the judge had been a personal friend of the respondent for several years prior to 1990. During that time, he had become concerned that certain unusual activities of the respondent might indicate mental instability. In particular, the respondent had developed a strong, almost obsessional interest in various scientific fields, which led him to travel often to Washington, D.C. in efforts to associate with government officials in those areas. Sometimes the respondent used these trips as excuses for failing to appear for scheduled court sessions. He made numerous claims that he was closely connected to high ranking government officials and scientists working on nationally important projects. Judge Smith believed that the respondent was suffering from delusions; the judge had called the offices of two senators whose names the respondent had mentioned and was told that the respondent had no official connection with them. On February 16, 1990, two days after the respondent had failed to appear at a scheduled court session, Judge Smith held a closed session of the court at G.A. 16 and told the respondent that he was "deeply concerned about your ability to function as a lawyer." The two then had an extended colloquy during which the respondent repeated several of his previous claims concerning his extra legal activities and the judge repeated his concerns. Finally, Judge Smith told the respondent that he must submit to an examination by Dr. Borden, at judicial department expense, or the judge would refer the matter to the grievance committee. Judge Smith conceded at the hearing before this court that he "forced" the respondent to submit to the examination.
The examination by Dr. Borden consisted of three office visits in February, March and April 1990, and psychological testing. The doctor issued a report on April 30, which he filed with the clerk of the court at G.A. 16.
On June 14, 1990, Judge Smith conducted another proceeding at G.A. 16, which also included a colloquy between him and the respondent about the respondent's actions following his previously ordered psychiatric examination. At that proceeding, the judge told the respondent that "you, sir, will get involved in a psychiatric treatment program in the next two weeks and CT Page 310 you report back here or I will refer all the transcripts of the proceedings, and Dr. Borden's report, to the statewide grievance committee." Ultimately, the respondent refused to comply with Judge Smith's direction and the judge referred the matter to the committee.
Dr. Borden testified at the hearing before this court that the respondent is very bright and knowledgeable in many different areas. The doctor's report states that the respondent's "problems can be characterized as a variation of a bipolar affective disorder, that is a manic depressive condition, which exists for the most part as a type of personality disorder but which appears to be increasingly contaminated by delusional thinking." The doctor would not say, however, that the respondent suffers from "mental infirmity," which he defined as a condition that substantially and consistently interferes with functioning in one or more important areas. Instead, he stated that the respondent can function well but that his extra — legal interests interfere with his judgment to the extent that they keep him from appearing in court as ordered. He testified that he was not aware of any interference with the respondent's ability as a lawyer.
Evidence of the respondent's actual practice of law included testimony of Judge Smith and himself as to his representation of several clients accused of misdemeanors and one felony (sale of cocaine). These were all disposed of by guilty pleas, which were duly accepted by the respective courts. There was no evidence that the respondent's legal work was defective in any way. These cases included at least one of those in which the respondent was criticized by Judge Smith for failing to appear earlier.
Finally, the respondent introduced in evidence a letter from Joseph L. Young, an official at the National Science Foundation, a government funding agency for scientific development. In the letter, Dr. Young states that the respondent has displayed to him considerable knowledge of various scientific matters and, in his opinion, is definitely "in touch with reality."
The petition requests, in accordance with Practice Book 41, that the court order an examination of the respondent by another physician to aid in the determination of incapacity. However, the court finds no basis for doing so. Judge Smith essentially fulfilled that function when he ordered the respondent to submit to the examination by Dr. Borden at judicial department expense. The committee was apparently satisfied that Dr. Borden's evaluation of the respondent is probative of the issues before the court since it called the doctor as its witness. The court is well satisfied that Dr. Borden is fully qualified to examine CT Page 311 the respondent, as he did, and aid the court in its determination. Another examination by a different doctor would, under these circumstances, be unduly onerous and intrusive. See State v. Canady, 187 Conn. 281 (1982); where the court observed that "(a) psychiatric and neurological examination . . . can be a `tool of harassment'."
In order to reach the conclusion that the respondent is incapacitated from continuing to practice law, the court must first find that he suffers from some mental infirmity or illness. The court must then find that such infirmity or illness renders him substantially incapable of practicing law. These criteria are, of course, intertwined. With respect to his mental condition, there was not sufficient evidence for the court to find that the respondent is suffering from mental infirmity or illness. Dr. Borden specifically refused to "label" the respondent, but he did define mental infirmity in this context as a condition that "substantially and consistently" interferes with the ability to practice law. Dr. Borden would not say that the respondent's obsession with his extra — legal activities or any other mental condition interfered with that ability, nor was there any other evidence tending in that direction. Moreover, there was independent evidence from Dr. Young of the National Science Foundation that the respondent's knowledge base and thought processes in these extra legal areas of his interest were reasonably sound. This is not the case, therefore, of an attorney who is unable to deal with the real issues of fact and law that arise in his law practice because he is so deeply immersed in a fantasy world. There simply was no evidence that the respondent's legal ability was impaired by his mental condition.
There is likewise insufficient evidence to establish that the respondent's mental condition, whatever may be its medical diagnosis, renders him incapable of carrying on the activities of a law practice. The evidence on this point was primarily Judge Smith's testimony that the respondent missed several court appearances. Significantly, however, in almost all of those incidents, the respondent communicated with the court and tried to arrange continuances. On some of those occasions, the respondent gave as an excuse that he had important governmental obligations. While these claims were exaggerated and perhaps reflective of some psychiatric problems, they were not mere products of his imagination. Again, therefore, this is not the case of an attorney incapable of meeting his scheduled obligations because of mental illness. Rather, the respondent simply allowed his other interests to overwhelm his judgment occasionally so that he chose to pursue those interests at the expense of his law practice obligations. That conduct, while it clearly indicates the respondent's misplaced priorities and might CT Page 312 reasonably subject him to disciplinary action, does not connote incapacity.
On the basis of the evidence presented, the court cannot conclude that the respondent is incapacitated from continuing to practice law on account of mental infirmity or illness. Accordingly, the committee's petition for an order placing him on inactive status is denied.
MALONEY, J.